IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA :
:
v. : 1:13CR 47-1
:
STANLEY SCOTT PORTER :

The United States Attorney charges:

## COUNT ONE

### BACKGROUND INFORMATION

1. At all times material to this Bill of Information, STANLEY SCOTT PORTER was a resident of Watauga County, North Carolina, and was in the business of operating several companies which provided foreign workers to clients in North Carolina, South Carolina and Georgia, including golf courses in the Myrtle Beach area in South Carolina and the Savannah area in Georgia.

2. At all times material to this Bill of Information, Winterscapes, LLC, was a limited liability corporation organized under the laws of North Carolina with its primary place of business in Boone, Watauga County, North Carolina. At all times material herein, STANLEY SCOTT PORTER was the president and operator of Winterscapes.

3. At all times material to this Bill of Information, Carefree Management, Inc., was a corporation organized under the laws of North Carolina. STANLEY SCOTT PORTER was president of

Carefree Management, Inc. At the direction of STANLEY SCOTT PORTER, Carefree Management, Inc., operated as the parent company of Winterscapes and in such capacity provided banking and administrative services for Winterscapes.

4. At all times material to this Bill of Information, Winterscapes was in the business of providing foreign workers to clients in North Carolina, South Carolina and Georgia. Winterscapes, at the direction of STANLEY SCOTT PORTER, contracted with such clients to provide foreign workers with H-2B temporary visas to work at client golf courses and resorts as laborers. Winterscapes did not possess equipment of any type allowing such company to perform landscaping, to make artificial snow, or to provide janitorial services.

5. At all times material to this Bill of Information, International Labor Management, Inc. ("ILMC"), was a corporation organized under the laws of the State of North Carolina with its headquarters and place of business in Vass, Moore County, in the Middle District of North Carolina. At all times material herein, ILMC was in the business of preparing and submitting petitions on behalf of client companies to the United States government for temporary foreign workers under the H-2B visa programs.

## THE H-2B PROCESS

6. The H-2B non-agricultural worker program is administered by the United States Department of Labor and the United States Department of Homeland Security Citizenship and Immigration Service (USCIS). The H-2B program allows United States employers to fill temporary nonagricultural jobs. To qualify for H-2B non-immigrant classification, allowing foreign nationals to work for the employer, the employer is required to establish that:

   a. the need for the foreign worker's services or labor is temporary, regardless of whether the underlying job can be described as permanent or temporary. The employer's need is considered temporary if it is a one-time need, a seasonal need, a peak load need, or an intermittent need;

   b. there are not a sufficient number of U.S. workers who are able, willing, or qualified and available to do the temporary work; and

   c. the employment of H-2B foreign workers will not adversely affect the wages and working conditions of similarly employed U.S. Workers.

7. The H-2B visa program carries a statutory numerical limit, or "cap," which mandates that only 66,000 aliens may be

3

issued a visa or otherwise be provided H-2B status (including through change of status) during any fiscal year.

8. Before requesting H-2B classification from USCIS, an employer seeking H-2B workers must first submit an Application for Foreign Temporary Labor Certification Application, known as a Form ETA-9142, to the Department of Labor. In the ETA-9142, the employer must demonstrate that it has conducted recruitment efforts in the geographical area of proposed employment and has not found U.S. workers willing to perform the work set forth and described in the ETA-9142 at the prevailing wage for that area. The ETA-9142 must describe the number of jobs to be filled, the number of H-2B visas requested for foreign temporary workers, and the specific nature and location of the jobs that the H-2B workers will perform in the United States. Upon review of the ETA-9142, the Department of Labor issues a Final Determination letter indicating whether an employer's application has been denied or approved.

9. After the Department of Labor has issued a Final Determination Letter certifying an employer for use of H-2B workers for specified jobs and job locations, the employer must submit a Form I-129, "Petition for Nonimmigrant Worker," with USCIS to obtain approval for issuance of H-2B visas. As with the ETA-9142, the I-129 petition requires the employer to describe the number of jobs to be filled, the number of H-2B

4

visas requested for foreign temporary workers, and the specific nature and location of the jobs that the H-2B workers will perform in the United States. The employer must attach the certified ETA-9142 to the I-129 petition.

10. Upon USCIS approval of an I-129 petition, USCIS issues an approval notice informing the employer that its petition has been approved and the H-2B visas have been granted.

THE WINTERSCAPES H-2B PETITIONS

11. At the direction of STANLEY SCOTT PORTER, Winterscapes contracted with ILMC to prepare and file the necessary petitions to obtain H-2B visas for Winterscapes in 2008-2009.

12. At the direction of STANLEY SCOTT PORTER, ILMC prepared an I-129 petition for Winterscapes in 2008 requesting one hundred and fifty H-2B visas for workers to perform work as "snowmakers" at ski resorts in Watauga and Avery Counties in North Carolina under the pretense that Winterscapes was in the business of providing snowmaking services, when in fact, such snowmaking was performed on location by the ski resorts with the resorts' own equipment.

13. Following approval of the 2008 Winterscapes I-129 petition, Winterscapes transported from Mexico approximately fifty workers on H-2B visas to work at North Carolina ski resorts. No need existed for one hundred and fifty "snowmakers." In February and March 2009, at the direction of

5

STANLEY SCOTT PORTER, Winterscapes used the remaining H-2B visas issued under the 2008 I-129 petition to transport from Mexico approximately 100 workers into the United States. These workers, at the direction of STANLEY SCOTT PORTER, were assigned to work for golf courses in South Carolina and Georgia which were clients of Winterscapes. The golf courses, who paid Winterscapes for the provision of the foreign workers, assigned the workers to perform landscaping work.

14. In 2009, STANLEY SCOTT PORTER directed ILMC to petition for two hundred and fifty H-2B workers to perform janitorial and maintenance work at North Carolina ski resorts. At the time the ski resorts only requested between five and eight H-2B workers from Winterscapes. STANLEY SCOTT PORTER intended that the other H-2B visas would be obtained in the fall of 2009 prior to the "cap" on H-2B visas being met, and then Winterscapes, at STANLEY SCOTT PORTER's direction, would transport workers from Mexico in February and March 2010. These workers would then be assigned to golf courses in South Carolina and Georgia to perform landscaping jobs unrelated to janitorial and maintenance work at North Carolina ski resorts.

15. At the direction of STANLEY SCOTT PORTER, ILMC prepared and submitted an ETA-9142 application containing the false statement that two hundred and fifty H-2B workers were needed for jobs as janitors at ski resorts in North Carolina.

Following certification of the ETA-9142 by the Department of Labor, ILMC filed an I-129 petition for Winterscapes at the direction of STANLEY SCOTT PORTER attaching the fraudulent ETA-9142 and requesting two hundred and forty six H-2B visas based on the stated need for two-hundred and forty-six foreign workers to be employed as janitors at ski resorts, which statement STANLEY SCOTT PORTER knew to be false. Based on the false statements in Winterscapes's 2009 ETA-9142 and I-129 petition, USCIS approved the issuance of two-hundred and forty-six H-2B visas for janitors to work at North Carolina ski resorts.

16. As directed by STANLEY SCOTT PORTER, ILMC prepared the 2009 Winterscapes ETA-9142 and I-129 petition in the ILMC facility in Vass, Moore County, in the Middle District of North Carolina. The 2009 Winterscapes ETA-9142 and I-129 petition were transmitted by United States mail to the Department of Labor and to USCIS by United States Mail from Vass, Moore County, in the Middle District of North Carolina.

17. At the direction of STANLEY SCOTT PORTER, Winterscapes paid ILMC for preparing the 2009 ETA-9142 application and I-129 petition by business check, which was then deposited into the bank account of ILMC. The funds used to pay ILMC for preparation of the 2009 ETA-9142 and I-129 petition derived from the proceeds of illegal activity, to wit: visa fraud; in violation of Title 18, United States Code, Section 1546(a).

7

EXECUTION

On or about July 13, 2009, in the County of Moore, in the Middle District of North Carolina, STANLEY SCOTT PORTER knowingly obtained non-immigrant visas, specifically, two hundred and forty-six H-2B foreign worker visas for entry into the United States which STANLEY SCOTT PORTER then knew to be procured by means of a false statement in that STANLEY SCOTT PORTER submitted and caused to be submitted a Form I-129 petition for non-immigrant workers and attached a Department of Labor ETA-9142 Application for Temporary Labor Certification, in both of which STANLEY SCOTT PORTER claimed, and caused to be claimed, that two hundred and forty-six aliens were needed to work and would work as janitors at ski resorts in Avery, Watauga, and Yancey counties in North Carolina, when in fact, as STANLEY SCOTT PORTER then well knew, jobs as janitors did not exist for two-hundred and forty-six alien workers at said ski resorts in North Carolina, and STANLEY SCOTT PORTER intended to take and send approximately two-hundred and forty of the foreign workers who crossed into the United States on the fraudulently obtained H-2B Visas to perform landscaping services on golf courses in South Carolina and Georgia for his own gain and profit.

All in violation of Title 18, United States Code, Sections 1546(a) and 2.

## COUNT TWO

1. Paragraphs One through Seventeen of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

2. On or about September 25, 2009, in the County of Moore, in the Middle District of North Carolina, and elsewhere, STANLEY SCOTT PORTER did knowingly engage and attempt to engage in a monetary transaction, by and through a financial institution affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the transfer of Carefree Management, Inc., check number 7853 in the amount of $14,000, to ILMC, and the deposit of said check into the account of ILMC at First Bank of Vass, such property having been derived from a specified illegal activity, that is, visa fraud, in violation of Title 18, United States Code, Section 1546(a); in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

1. The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(6).

9

2. Upon conviction of an offense in violation of Title 18, United States Code, Section 1546, as alleged in Count One, the defendant, STANLEY SCOTT PORTER, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(6), any and all right, title, and interest he has in the following:

    (a) any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of the offense; and

    (b) any property, real or personal –

        (i) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; or

        (ii) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

The property to be forfeited includes, but is not limited to, Three Hundred Thousand and 00/100 Dollars ($300,000.00), such sum of money representing the total amount of forfeitable proceeds obtained as a result of such offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

10

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982.

_____
FRANK J. CHUT, JR.
ASSISTANT UNITED STATES ATTORNEY

_____
RIPLEY RAND
UNITED STATES ATTORNEY

11